[Civ. No. 27971.   Second Dist., Div. Three.   April 22, 1964.]

ANGELA WASHINGTON, a Minor, etc., et al., Plaintiffs and Appellants, v. WINIFRED A. BLAMPIN, Defendant and Respondent.

Miller & Malone and Loren Miller for Plaintiffs and Appellants.

Kirtland & Packard and Judith O. Hollinger for Defendant and Respondent.

FILES, J.—This action was commenced in the municipal court to recover damages against a physician who allegedly refused to furnish services for the sole reason that plaintiffs are Negroes. The complaint contains two causes of action. The first is on behalf of a minor child, who alleges that defendant refused to treat her on October 21, 1961. In the second cause of action the plaintiff is the father of the child, who alleges that on October 20, 1961, defendant agreed to render medical service to plaintiff's daughter, and that on October 21, defendant refused to render services, in violation of section 51 of the Civil Code.[1]

---

[1]Civil Code, section 51, as amended in 1961, provides:

"This section shall be known, and may be cited, as the Unruh Civil Rights Act.

"All persons within the jurisdiction of this State are free and equal, and no matter what their race, color, religion, ancestry, or national origin are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

"This section shall not be construed to confer any right or privilege on a person which is conditioned or limited by law or which is appli-

In the municipal court defendant made a motion for judgment on the pleadings upon the ground that Civil Code, sections 51 and 52, do not apply to the services of physicians. That motion was granted. Upon the entry of judgment against them plaintiffs appealed to the appellate department of the superior court, which reversed the judgment, and certified the case to this court to settle an important question of law. This court then ordered the case transferred to it.

The issue appears not to have come before an appellate court since the 1959 Legislature enacted the Unruh Civil Rights Act, which greatly broadened the area in which discrimination is forbidden. The question presented is whether the "services in all business establishments," to which all persons are entitled regardless of race or color under that statute, include the services of a physician.

There is nothing novel in referring to the practice of medicine as a business. Business and Professions Code, sections 2380[2] and 2380.5[3], which deal with advertising by licensed physicians, both refer to "medical business."

In *Young* v. *Board of Medical Examiners*, 93 Cal.App. 73 [268 P. 1089], the court upheld the revocation of a license under a statute which was the predecessor of section 2380. The opinion of the court stated (at p. 75): "While the occupation of a physician more commonly is referred to as a profession, nevertheless it may properly be included within the broader word of 'business.'"

In *Crutchett* v. *Lawton*, 139 Cal.App. 411 [33 P.2d 839], the court held that the practice of medicine is a business

---

cable alike to persons of every color, race, religion, ancestry, or national origin."

Civil Code, section 52, provides:

"Whoever denies, or who aids, or incites such denial, or whoever makes any discrimination, distinction or restriction on account of color, race, religion, ancestry, or national origin, contrary to the provisions of section 51 of this code, is liable for each and every such offense for the actual damages, and two hundred fifty dollars ($250) in addition thereto, suffered by any person denied the rights provided in section 51 of this code."

[2]Business and Professions Code, section 2380: "All advertising of medical business which is intended or has a tendency to deceive the public or impose upon credulous or ignorant persons and so be harmful or injurious to public morals or safety constitutes unprofessional conduct within the meaning of this chapter."

[3]Business and Professions Code, section 2380.5: "All advertising of the medical business in connection with which the holder of any certificate fails to use his name constitutes unprofessional conduct within the meaning of this chapter."

within the meaning of Civil Code, section 1674[4] (now Bus. & Prof. Code, § 16601).

Other cases referring to the practice of medicine as a business are *Ex parte Greenall*, 153 Cal. 767, 769 [96 P. 804]; *Newhouse* v. *Board of Osteopathic Examiners*, 159 Cal.App. 2d 728, 733 [324 P.2d 687]; and *People* v. *T. Wah Hing*, 79 Cal.App. 286, 289 [249 P. 229].

In *Burks* v. *Poppy Construction Co.*, 57 Cal.2d 463 [20 Cal.Rptr. 609, 370 P.2d 313], the Supreme Court held that a company engaged in the business of developing, building and selling a tract of houses was a "business establishment" within the meaning of Civil Code, section 51. The opinion of the court declared (at p. 468): "The Legislature used the words 'all' and 'of every kind whatsoever' in referring to business establishments covered by the Unruh Act (Civ. Code, § 51), and the inclusion of these words, without any exception and without specification of particular kinds of enterprises, leaves no doubt that the term 'business establishments' was used in the broadest sense reasonably possible. The word 'business' embraces everything about which one can be employed, and it is often synonymous with 'calling, occupation, or trade, engaged in for the purpose of making a livelihood or gain.' "

Especially pertinent here is the portion of the *Burks* opinion which interprets the legislative history of the law: "The original version of the bill which was presented to the Legislature, in addition to affording protection in 'business establishments,' referred specifically to the right 'to purchase real property' and to other rights, such as the obtaining of 'professional' services. Section 51, as enacted in 1959, eliminated all such specific references. . . . These deletions can be explained on the ground that the Legislature deemed specific references mere surplusage, unnecessary in view of the broad language of the act as finally passed. [Citations.] It should be noted in this connection that in the original bill the general term 'business establishments' was not, as now, followed by the words 'of every kind whatsoever' and that those words were added in the draft that deleted the specific

---

[4]Civil Code, section 1674, as it applied in the cited case, read: "One who sells a good-will of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city, or a part thereof, so long as the buyer, or any person deriving title to the good-will from him, carried on a like business therein."

reference to the purchase of real property." (57 Cal.2d at p. 469.)

This reasoning points inevitably to the conclusion that the phrase "business establishments of every kind whatsoever" was intended to embrace professional services as well as real estate sales.

In *Willis* v. *Santa Ana etc. Hospital Assn.*, 58 Cal.2d 806 [26 Cal.Rptr. 640, 376 P.2d 568], the Supreme Court held that the Cartwright Act (Bus. & Prof. Code, §§ 16700-16758) does not apply to the professions. There is no language in that act which compares with the sweeping phrase of Civil Code, section 51, and the decision in the *Willis* case cannot be read as limiting anything said in *Burks* as to the scope of section 51.

█ Defendant's brief asserts that because of the personal nature of the relationship between physician and patient, the court should not attempt to compel a physician to treat an unwelcome patient. This argument is not pertinent to the issue in this case. Plaintiffs are seeking damages, and the personal nature of the physician-patient relationship creates no obstacle to a recovery of damages when service is refused by reason of the plaintiffs' race or color.

█ The services sought by the plaintiffs, as the complaint alleges, were services both to the father and to the child. It is the legal duty of the father to provide necessary medical care for his child. (*Slaughter* v. *Zimman*, 105 Cal.App.2d 623 [234 P.2d 94].) The complaint here alleges, in the father's cause of action, that he had entered into an agreement with the defendant whereby defendant was to render services to plaintiff's minor child. Under these allegations, the services were to be rendered to and for the father although the patient was the child. (*Evans* v. *Noonan*, 20 Cal.App. 288 [128 P. 794].) The defendant's alleged denial of services was therefore a violation of the father's right to services under Civil Code, sections 51 and 52. It follows that the complaint states a cause of action both on behalf of the father and on behalf of the child. There is no occasion to discuss, at this stage of the proceeding, what recovery, if any, either may be entitled to.

The judgment of the municipal court is reversed.

Shinn, P. J., and Ford, J., concurred.